UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 10-59 (DWF/FLN)

      Plaintiff,

      v.                                          **REPORT AND
                                                   RECOMMENDATION**

Shane Allen Werlein,

      Defendant.

_____

LeeAnn K. Bell, Assistant United States Attorney, for the Government.
Andrea K. George, Assistant Federal Defender, for Defendant.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 20, 2010, on Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#14] and Defendant's Motion to Suppress Statements, Admissions, and Answers [#15]. This matter came once again before the undersigned on June 10, 2010 on Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#31] and Defendant's Motion to Suppress Statements, Admissions, and Answers [#32]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#14] be **DENIED**, that Defendant's Motion to Suppress Statements, Admissions, and Answers [#15] be **DENIED as moot**, that Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#31] be **DENIED,** and that Defendant's Motion to Suppress Statements, Admissions, and Answers [#32] be **DENIED as moot**.

## I.  FINDINGS OF FACT

**A.	The March 9, 2010 Indictment and Two Related Search Warrants**

On March 9, 2010, Defendant Shane Allen Werlein was indicted and charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and 18 U.S.C. § 2252(b)(2).  (Indictment, Doc. No. 1.)  The Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#14] challenges two state search warrants for the Defendant's Stillwater, Minnesota residence.  (Doc. No. 14; Gov't Exs. 1, 2.)  Defendant contends that the search warrants should be suppressed pursuant to Federal Rule of Criminal Procedure 12 because the two warrants were issued without a sufficient showing of probable cause in the supporting affidavits.  (Doc. No. 14.)

*1.	The March 4, 2009 Search Warrant (Gov't Ex. 1)*

The first search warrant in question was issued on March 4, 2009 for the Defendant's apartment on North 62nd Street in Stillwater, Minnesota.  (Gov't Ex. 1.)  This warrant was requested by Stillwater Police Department Investigator Brian Bruchu.  *Id.*  Signed by Washington County Judge Richard C. Ilkka of the Tenth Judicial District Court of the State of Minnesota, the warrant authorized a search for property and things including:  computer systems; data contained on hard drives or removable media that may show the distribution of child pornography; papers and effects that tend to show the possession or distribution of child pornography or the enticement of children online; programs and manuals relating to operating systems or applications; notes and other documentation that may reveal passwords; proof of residency and documentation relating to the Internet; digital camera equipment; video tapes; depictions of minors under the age of 18 engaged in or simulating prohibited sexual acts; depictions of nudity involving minors under the age of 18; and any evidence related to the sexual exploitation of children.  *Id.*

Bruchu's affidavit in support of the search warrant consists of approximately five pages. (Gov't Ex. 1 at Application.) The first two pages of the supporting affidavit are devoted to a description of how the Internet can be used to facilitate crimes against children by those who get sexual gratification from viewing images of children or interacting with minors. *Id.* The description also includes an explanation of how these activities are typically investigated and the fact that collectors of child pornography often maintain their collections on computers in digital or electronic formats. *Id.*

Next, the supporting affidavit states that on February 27, 2009, Bruchu received a report from City of Minneapolis Police Officer Dale Hanson, a representative for the Minnesota Internet Crimes Against Children Task Force. *Id.* Hanson's report is included in the affidavit, and explains that during authorized internet undercover operations on January 9, 2009, Hanson was searching a public file sharing network called the Gnutella Network. *Id.* This network, Hanson stated, uses an encryption method called Secure Hash Algorithm Version 1 ("SHA1"), which was developed by the National Institute of Standards and Technology and the National Security Agency. *Id.* SHA1 is a software used to verify the unique identity of individual files – regardless of the name given to the file by a user – by revealing a file's "digital signature." *Id.* This digital signature is called a SHA1 hash value. *Id.* The explanatory introduction in the first two pages of the affidavit states that if two files are processed by the SHA1 software and result in the same SHA1 hash value, it is possible to conclude "with a precision that greatly exceeds 99.9 percent certainty" that the two files are identical. *Id.*

Hanson's report states that when he was searching the Gnutella Network on January 9, 2009, he identified a suspicious computer at the IP address of 71.36.157.79 in the St. Paul metro area. *Id.* Hanson also identified the computer's host computer identifier, which is an alpha-

numeric code unique to each host on the network. *Id.* Hanson then obtained a list of 67 publicly available files from that IP address. *Id.* Eleven of those files had been previously "identified as child pornography by task force investigators," and other unknown files on the list contained titles with "common child pornography terms." *Id.* Hanson states that he attempted to download all of the files but could not get a complete download. *Id.* The video files he was able to download were placed on a CD and included with his report. *Id.*

Hanson's report states that he was able to identify several of the downloaded files as child pornography within the meaning of Minn. Stat. §617.247 because their SHA1 hash values matched the SHA1 hash values of files he had seen during previous investigations and had determined to be child pornography. *Id.* Hanson's report describes three of the downloaded files as follows:

1. File Name: melayu-Awek hussyfan pthc r@ygold babyshivid new - pthc l of r liluplanet (16).mpeg

  This file is a 33 minute, 53 second video showing a young female appearing to be 9 to 12 years old performing sexual activities, including oral sex, with an adult male.

2. File Name: BEST OF stickam-lil_puss-1 (nastygirl).mpg

  This file is a 6 minute and 2 second video showing a girl who appears to be 10 to 13 years old disrobing and masturbating in front of a web camera.

3. File Name: (Hussyfan) (pthc) (r@ygold) Preteen Asian ALICA, 11yo Philippine ( Filipina ) child prostitute XXX HC Pedo ptsc.mpg

> This file is a 16 minute and 41 second video showing a girl who appears to
> be 8 to 12 years old performing oral sex and other sexual activities with an adult
> male.

*Id.* Hanson's report also states that he browsed the same host computer on a number of days between November 19, 2008 and February 12, 2009 and on a number of the browsed days the host computer had one or more known or suspected child pornography files. *Id.* During this time period, he states, the host computer client ID remained the same although the IP address changed several times. *Id.* Law enforcement sent an administrative subpoena to internet service provider Qwest for the IP address 71.36.157.79, and Qwest reported that the subscriber was located at Defendant's apartment on North 62nd Street in Stillwater, Minnesota. *Id.*

Next, the affidavit states that Bruchu viewed the videos that Hanson's report describes. Bruchu's description of the files in the affidavit match Hanson's descriptions, and Bruchu additionally observes that the persons in the first and third videos appear "obviously prepubescent" and that the person in the second video appears "prepubescent." *Id.* Bruchu confirmed Defendant's residency at the address Qwest provided by checking with a state database, researching Stillwater police department files, and speaking with the property manager at the Defendant's address. *Id.* After undertaking those steps, Bruchu requested the search warrant at issue to locate data pertaining to child pornography and the exploitation of children.

Bruchu executed the search warrant at Defendant's residence on March 4, 2009 at 3 p.m., seizing at least 26 items including computer components, a webcam, an Xbox, an iPod, two cell phones, multiple CDs, other digital storage, a camera, and miscellaneous documents. (Gov't Ex. 1 at Receipt, Inventory and Return.)

2. *The March 12, 2009 Search Warrant (Gov't Ex. 2.)*

The second search warrant was issued on March 12, 2009 for the electronic data contained in items seized during the execution of the first search warrant. (Gov't Ex. 2.) Bruchu was again the affiant, and the warrant was signed by Washington County Judge Thomas G. Armstrong. *Id.* The seized property is listed as located at the Stillwater Police Department Evidence Room on 4th Street North in Stillwater. *Id.* The content of the supporting affidavit for the March 12, 2009 search warrant is substantially similar to the content of the affidavit in support of the March 4, 2009 search warrant. (*Compare* Gov't Exs. 1, 2.) The March 12, 2009 affidavit includes explanatory information, Hanson's report, the fact that the March 4, 2009 warrant was executed, and the fact that certain property was seized. (Gov't Ex. 2.) However, the affidavit in support of the March 12, 2009 warrant does not include Bruchu's confirmation of Hanson's description of the three downloaded files. *Id.* The March 12, 2009 affidavit states that the warrant seeks to locate all data pertaining to child pornography and the exploitation of children located on a Compaq Presario computer, a Panasonic Palmcorder, a black 80 GB iPod, an Xbox, four USB drives, two cell phones, a FujiFilm S500 digital camera and 83 non-professionally produced CD/DVDs. *Id.*

Law enforcement executed the search warrant at 3 p.m. on March 12, 2009 at evidence locker No. 8 at the Stillwater Police Department. (Gov't Ex. 2 at Receipt, Inventory and Return.) The items searched were listed as being analyzed by a detective at the Washington County Sheriff's Office.

**B.     The May 11, 2010 Superseding Indictment and Six Related Search Warrants**

On May 11, 2010, the Government issued a superseding indictment for the Defendant. (Superseding Indictment, Doc. No. 23.) He was charged with one count of possession of child

pornography and two counts of production of child pornography. *Id.* The Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#31] challenges six state search warrants related to the superseding indictment. (Doc. No. 31; Gov't Exs. 1A-6A[1].) The Defendant contends that evidence seized under the search warrants should be suppressed pursuant to Federal Rule of Criminal Procedure 12 because each of the six warrants was issued without a sufficient showing of probable cause in the supporting affidavits. (Doc. No. 31.)

1. ***The Three Search Warrants for Defendant's Person, Residence, Car, and IBM Thinkpad Laptop Computer  (Gov't Exs. 1A-3A)***

During the department's March 2009 investigation into Defendant's activities, Stillwater Police Department investigators identified a female the Court will identify as L.R. (Gov't Ex. 1A at Application.) L.R. has an active Harassment Restraining Order against the Defendant in connection with sexual assault, harassment, and stalking allegations L.R. made against Defendant when she was a teenager. *Id.* When items were seized from the Defendant's residence in March 2009, officers found photographs and video of L.R. taken without her permission. *Id.* Stillwater Police Department Investigator Kyle Sykes, who requested all six of the warrants associated with the June 10, 2010 hearing, stated that he conducted an extensive interview with L.R. in March 2009. *Id.* Later, on November 13, 2009, L.R. contacted Sykes regarding messages L.R. had received via her Facebook profile from Facebook profiles named "Ashley Casper" and "Ashley Brick." *Id.* L.R. informed Sykes that she suspected the Defendant was behind these profiles because the comments made by "Ashley Casper" and "Ashley Brick" were very similar to comments Defendant had made in prior incidents of

---

[1] The search warrants in connection with the June 10, 2010 hearing were labeled Government Exhibits 1 through 6. As the search warrants in connection with the April 20, 2010 hearing were labeled Government Exhibits 1 and 2, it appears that different Government exhibits have identical labels. For purposes of clarity, the Court will refer to the

harassment reported by L.R.  *Id.*  Both profiles made comments about L.R.'s appearance, calling her "gorgeous" and stating that L.R. had "gorgeous eyes."  *Id.*  L.R. forwarded these Facebook communications to Sykes.  *Id.*  In addition, she provided information associated with the suspect profiles, including the email address for "Ashley Casper" (ashleycasper78@yahoo.com) and the email address for "Ashley Brick" (ashleybrick71@yahoo.com).  *Id.*

An administrative subpoena sent by Sykes to Yahoo.com revealed that the IP addresses and address logs associated with ashleycasper78@yahoo.com and ashleybrick71@yahoo.com were owned by Qwest Communications.  *Id.*  Sykes sent an administrative subpoena to Qwest, and Qwest's records showed that both the IP address for ashleycasper78@yahoo.com and the IP address for ashleybrick71@yahoo.com were assigned to an account belonging to Renae Sivigny, residing at Defendant's residence on 62nd Street North in Stillwater, Minnesota.  *Id.*  Sivigny is known to be Defendant's live-in girlfriend.  *Id.*

Sykes also sent subpoenas to Facebook.com, revealing that the "Ashley Brick" profile was associated with the same IP address owned by Qwest and assigned to Sivigny at Defendant's residence.  *Id.*  It appears that at the time Sykes drafted the affidavit, he had yet to receive information from Facebook about the "Ashley Casper" account due to a transmission error with the Facebook subpoena. *Id.*

Sykes has created a fictitious Facebook profile and has monitored the "Ashley Brick" and "Ashley Casper" Facebook profiles.  *Id.*  Sykes observed what he described as "sexually charged" communications between "Ashley Casper" and a 17-year-old female in Madelia, Minnesota.  *Id.*  "Ashley Casper" sent Facebook messages to the juvenile in Madelia, asking her

exhibits in connection with the June 10, 2010 hearing as Government Exhibits 1A, 2A, 3A and so forth.

8

if she was "bi," calling her "sexy" and "gorgeous," and requesting that the Madelia juvenile text her. *Id.* "Ashley Casper" also commented on a photo of the Madelia juvenile, stating, "Mmmmmm can I see those eyes between my thighs lol." *Id.*

Sykes has observed similar comments by "Ashley Brick," including a comment stating, "down the shirt pic, sexy" on a photo of an unidentified, obviously juvenile female taking a photo of her bra-covered breasts through the neck of her shirt. *Id.* "Ashley Brick" also commented "omg I want you" on a photo of another obviously juvenile female who was photographed sunbathing. *Id.* Sykes also observed "Ashley Brick" commenting on many other young females' photos, making many comments on "how pretty or gorgeous a subject's eyes are." *Id.*

On February 19, 2010, Sykes became aware of a complaint reported to the Washington County Sheriff's Office by a juvenile female reporting ongoing and unwanted harassing communications by the Defendant via Facebook. *Id.* Skyes states that he knows the full name and date of birth of this juvenile female, but refers to her in the affidavit as "VMS." *Id.* VMS knew the Defendant through her juvenile boyfriend, who is Sivigny's brother. *Id.* VMS became friends with the Defendant on Facebook, and VMS stated that the Defendant began asking VMS and her boyfriend to come to Werlein's apartment. *Id.* Sykes located one exchange wherein the Defendant stated "I had it set up so you could have my house for a while to yourselves" and "I have lots of movies you guys can watch and you can make out and whatnot and I will leave you guys alone…". *Id.* VMS refused the invitation and deleted the Defendant as a friend. *Id.* However, the Defendant continued to message VMS via Facebook, prompting VMS's report to the Washington County Sheriff. *Id.*

During Sykes's conversation with VMS, Sykes showed her the "Ashley Brick" profile, which VMS immediately recognized. *Id.* Skyes states that VMS said "Ashley Brick" had wanted her to engage in prostitution and had initiated instant message chats with VMS on Facebook, asking VMS if she wanted "to make a lot of money." *Id.* Via instant message, VMS stated, "Ashley Brick" told VMS that VMS could "make out" with guys, and give them "hand jobs and blow jobs" and charge money for it." *Id.* "Ashley Brick" told VMS she had made $1,000 in a week and that "Ashley Brick" wanted VMS to join her in these activities. *Id.* When VMS told "Ashley Brick" she was only 14, "Ashley Brick" responded "so what, I'm 15". *Id.* Additionally, in a separate instant message conversation, "Ashley Brick" asked VMS for a nude picture and asked if VMS had ever sent her boyfriend a nude picture. *Id.*

VMS also stated that a profile named "Jason Brickers" had asked her for nude or semi-nude pictures, and had told her that an unknown 25-year-old male wanted to engage in a sexual encounter with VMS. *Id.* VMS said she refused.

Sykes stated that he asked VMS to look at "Ashley Brick's" Facebook friend list in an attempt to identify other potential victims. *Id.* VMS recognized 26 profiles on "Ashley Brick's" friend list that VMS stated were all from the Mahtomedi School district, and all near VMS's age. *Id.*

i.      **The February 25, 2010 Warrant for Defendant's Person and Residence (Gov't Ex. 1A)**

Based on the foregoing information set forth in his supporting affidavit, Sykes requested the third search warrant in question for the Defendant's person and residence. The warrant, signed on February 25, 2010 by Judge Ilkka, authorized a search for property and things

including: computer systems; proof of residency and documents related to the Internet; programs and manuals related to operating systems or applications; documentation that may reveal passwords; removable media and the data contained therein; cell phones and mobile devices; papers and effects that tend to show the online enticement of children; digital film or cameral equipment that may be used for the furtherance of child enticement, harassment, and/or stalking of juveniles; depictions of nudity involving minors under the age of eighteen; any evidence related to the sexual exploitation of children; and a forensic search of seized items for data stored therein.  *Id.*

Sykes executed the search warrant at Defendant's residence on February 26, 2010 at 10:10 a.m., seizing items including a Dell Inspiron mini laptop, a black tote with miscellaneous marijuana paraphernalia and letters, a Qwest bill, other mail, two cell phones and two cell phone power cords.  (Gov't Ex. 1A at Receipt, Inventory and Return.)

ii.      **The February 26, 2010 Warrant for Defendant's Vehicle (Gov't Ex. 2A)**

The fourth search warrant in question is the February 26, 2010 warrant for Defendant's vehicle.  Sykes's supporting affidavit states that when law enforcement executed the February 25, 2010 warrant for Defendant's person and residence (Gov't Ex. 1A) on the morning of February 26, 2010, the Defendant was not at the residence and his 2001 Jeep Cherokee was not in the vicinity of his residence.  (Gov't Ex. 2A at Application.)   At approximately 11 a.m., the Defendant returned to his residence in the Jeep Cherokee and was subsequently arrested.  *Id.*  At that time, a laptop computer and cables was in plain view in the passenger-side back seat of the vehicle.  *Id.*  Officers impounded Defendant's vehicle.  *Id.*

Sykes requested the February 26, 2010 warrant for Defendant's vehicle to search and seize the laptop computer.  *Id.*   The warrant also requests that the vehicle be searched for the

same items listed in the February 25, 2010 warrant for Defendant's person and residence. (*Compare* Gov't Ex. 1A, Gov't Ex. 2A.)  Judge Ilkka signed the warrant based on the content of Sykes supporting affidavit, which is almost identical to the content of the affidavit in support of the February 25, 2010 warrant for Defendant's person and residence.  *Id.*  The sole difference between the two affidavits is the insertion of a paragraph near the end of the affidavit describing how the Defendant came home in his Jeep Cherokee and how the vehicle was seized after officers saw a laptop and cables in plain view in the back seat.  (Gov't Ex. 2A at Application.)

Sykes executed the search warrant at Defendant's residence on February 26, 2010 at 5 p.m., seizing a Dell laptop with a power cord.  (Gov't Ex. 2A at Receipt, Inventory and Return.)

### iii.    The March 2, 2010 Warrant for a Laptop and Cables Located at a Lake Elmo, Minnesota Residence (Gov't Ex. 3A)

The fifth search warrant in question is the March 2, 2010 warrant for a residence on Lake Elmo Ave. N. in Lake Elmo, Minnesota.  Sykes's affidavit states that on February 26, 2010, after executing the initial warrant for Defendant's person and residence, Sykes learned that one of the seized laptops was "on loan" to the Defendant and Sivigny from another individual.  (Gov't Ex. 3A at Application.)  Sykes stated that the Defendant's personal laptop was currently in the possession of Robert Gardner, who resides on Lake Elmo Ave. N. in Lake Elmo, Minnesota.  *Id.* Sykes contacted Gardner on March 2, 2010, and Gardner confirmed that he was repairing Defendant's IBM Thinkpad T42 laptop and had loaned his laptop to the Defendant for the duration of the repair.  *Id.*  The affidavit states that Gardner agreed to hold the computer until law enforcement arrived with a warrant to take it into custody. *Id.*

The warrant was signed by Washington County Judge Mary E. Hannon on March 2, 2010.  Sykes's affidavit in support of the warrant for the Lake Elmo residence is once again

almost identical to the content of his affidavit in support of the February 25, 2010 warrant for

Defendant's person and residence.  (*Compare* Gov't Ex. 1A, Gov't Ex. 3A.)  The sole difference

between the two affidavits is the insertion of a paragraph near the end of the affidavit describing

the discovery of Gardner's loaner laptop and the fact that Gardner confirmed he was in

possession of Defendant's IBM Thinkpad T42 laptop for purposes of repairing the laptop.

(Gov't Ex. 3A at Application.)   The warrant requests an IBM Thinkpad T42 laptop, power

cords, accessories, external media belonging to the Defendant or Sivigny, and a forensic search

of the items.  *Id.*

Sykes executed the search warrant at Gardner's Lake Elmo residence on March 3, 2010

at 11:45 a.m., seizing an IBM Thinkpad T42 laptop and a power cord.  (Gov't Ex. 3A at Receipt,

Inventory and Return.)

2. ***The Search Warrants for Facebook and Yahoo Headquarters (Gov't Exs. 4A-5A)***

i.      **The Warrant for Facebook Headquarters (Gov't Ex. 4A)**

The sixth search warrant in question is the March 18, 2010 warrant for Facebook

headquarters in Palo Alto, California.  This warrant, requested by Sykes and signed by

Washington County Judge B. William Eckstrum, authorized a search for property and things

including:  subscriber information, IP logs and originating IP address, and all content, phone

numbers, and email addresses associated with the "Jason Brickers" (White Bear Lake, MN)

Facebook profile; all content and phone numbers associated with the "Ashley Brick"

(ashleybrick71@yahoo.com) Facebook profile; and all content and phone numbers associated with the "Ashley Casper" (ashleycasper78@yahoo.com) Facebook profile. (Gov't Ex. 4A at Application.)

The supporting affidavit again describes how L.R. reported that she believed the "Ashley Casper" and "Ashley Brick" Facebook profiles were actually fake online profiles used by the Defendant. *Id.* Sykes goes on to state that the IP addresses for both Facebook profiles were assigned to a Qwest account at the Defendant's address. *Id.* The affidavit states that Sykes interviewed three juvenile females, aged 13, 14, and 16, whose full names and dates of birth are known to Sykes. *Id.* Two of the teens reported numerous contacts with "Ashley Brick" via Facebook, and both were asked by "Ashley Brick" to provide nude or sexually explicit photographs. *Id.* One victim reported that "Ashley Brick" asked her to engage in prostitution via Facebook. *Id.*

All three teens reported multiple contacts with a third Facebook profile, known as "Jason Brickers." *Id.* The 13-year-old reported that "Jason Brickers" asked her for nude and/or explicit photos and that she had sent him a picture of herself wearing only her bra and underwear. *Id.* Sykes was able to confirm that the photo was sent when he viewed the saved message on her Facebook profile. *Id.* The 14-year-old reported contact with "Jason Brickers" via Facebook and via telephone (both cell phone text messaging and oral communication.) *Id.* The 14-year-old provided two cell phone numbers given to her by "Jason Brickers." *Id.* Sykes stated that he recognized one of the cell phone numbers as belonging to the Defendant. *Id.* The 14-year-old also identified the Defendant in a photo line-up as the man who first tried to meet with her at her bus stop, and later tried to pick her up in his vehicle while she was out walking in her neighborhood. *Id.*

The 16-year-old reported one Facebook contact with "Jason Brickers" that consisted of a message with a request for nude or explicit photographs of her, and a reference to "making out naked in his hot tub." *Id.* The 16-year-old also provided a phone number given to her by "Jason Brickers," and again it was the same number that Sykes recognized as belonging to the Defendant. *Id.*

The final two paragraphs of Sykes's affidavit state that he has executed three search warrants related to the Defendant, resulting in the seizure of Defendant's computer systems and cell phones. *Id.* Information relating to "Ashley Brick" has been found on the Defendant's cell phone. *Id.* Lastly, Sykes states that he believes the requested information is among the extensive records retained by Facebook – including text messages, pictures, and instant message chat sessions – and that this information is necessary to confirm the facts of the case against Defendant. *Id.*

Sykes executed the search warrant on March 18, 2010 at 9:30 a.m. via email and fax. (Gov't Ex. 4A at Receipt, Inventory and Return.) The return states that Sykes has yet to receive the information requested by the warrant. *Id.*

ii.     **The Warrant for Yahoo Headquarters (Gov't Ex. 5A)**

The seventh search warrant in question is the March 26, 2010 warrant for Yahoo.com headquarters in Sunnyvale, California. This warrant, requested by Sykes and signed by Washington County Judge Ellen L. Maas, authorized a search for property and things including: all records, email content, instant messages, chat sessions, and message contents related to ashleybrick71@yahoo.com, the screen name ashleybrick71, ashleycasper78@yahoo.com, the screen name ashleycasper78, jasonbrickers@yahoo.com, and the screen name jasonbrickers. (Gov't Ex. 5A at Application.)

The affidavit in support of the Yahoo headquarters warrant is identical to the affidavit in support of the March 18, 2010 warrant for Facebook headquarters – with the exception of the Facebook warrant's final two paragraphs. *Id.* In the place of the final two paragraphs from the Facebook warrant's supporting affidavit, the Yahoo affidavit provides three paragraphs of different information. *Id.*

The first of the three paragraphs includes additional information about "Jason Brickers." Sykes reported that the 13-year-old victim referenced above contacted Sykes on March 24, 2010 and stated she recalled an email she had received from "Jason Brickers." *Id.* The 13-year-old provided Sykes with her email address and password, and Sykes was able to log on to her account. *Id.* He found an email from jasonbrickers@yahoo.com dated February 3, 2010 that contained a photo of a young, nude adult male lying on his back. *Id.* The focal point of the picture was the male's erect penis. *Id.*

The second of the three paragraphs states that Sykes has executed four search warrants related to Defendant, resulting in the seizure of the Defendant's cell phones. *Id.* A forensic search of the Defendant's cell phone revealed a Yahoo! Instant message chat application with a screen name ashleybrick71 and a saved email address for ashleycasper78@yahoo.com. *Id.*

The final of the three paragraphs states that FBI Special Agent Maureen Lese has sent Yahoo.com a preservation request regarding all emails, chat sessions, instant message sessions, and other content pertaining to the above-referenced email accounts. *Id.*

Sykes executed the search warrant on March 26, 2010 at 4 p.m. via fax. (Gov't Ex. 5A at Receipt, Inventory and Return.) The return states that Sykes has yet to receive the information requested by the warrant. *Id.*

3. ***The Search Warrant for the White Bear Lake Residence (Gov't Ex. 6A)***

The eighth and final search warrant in question is the May 13, 2010 warrant for a residence on Van Dyke Street in White Bear Lake, Minnesota described as a brown single-family residence with a single-car attached garage. (Gov't Ex. 6A at Application.) This warrant, requested by Sykes and signed by Ramsey County Judge Paulette K. Flynn, authorized a search for property and things including: digital photographs and video recordings of the bedroom/location of assault; light brown/tan bed sheets with a pattern of multi-colored square shapes; and residency documents. *Id.*

The supporting affidavit explains the history of Sykes's investigation of Defendant, and then goes on to state that Sykes has now identified another apparent victim – a 14-year-old female from Mahtomedi identified as SJL. *Id.* During her first interview with Sykes, SJL reported that she was in an "online relationship" with "Jason Brickers," and that they communicated often via Facebook and cell phone texts. *Id.* SJL also reported that "Jason Brickers" asked for nude pictures of her, and stated that a man who identified himself as the father of "Jason Brickers" had tried to pick her up in her neighborhood and had stopped by her bus pick-up location. *Id.* SJL positively identified that man as the Defendant in a sequential photo line-up. *Id.*

After SJL's first interview, law enforcement recovered photographs from Defendant's seized computer and cell phones. *Id.* Sykes identified photos of a girl in various states of undress immediately recognizable as SJL. *Id.* Sykes also found a series of photographs showing SJL and the Defendant together, apparently nude and lying in bed. *Id.* There was also a photo of SJL performing oral sex on an adult male penis. *Id.* The photographs appeared to be

taken in a bedroom on a bed with light brown or tan colored sheets with a multi-colored square-shaped pattern. *Id.* There also appeared to be a shelf or ledge at the head of the bed, and the walls were dark wood paneling with posters. *Id.*

After finding the photographs of SJL, Sykes conducted a second interview with SJL and showed her the photos. *Id.* SJL reported that on or about February 11, 2010 she had arranged to meet with "Jason Brickers," but had then been picked up by the Defendant, who told her that "Jason" had overslept and that the Defendant would take SJL to his house to meet up with "Jason." *Id.* SJL stated that the Defendant took her to an unknown residence which she knew to be located in White Bear Lake, and told her "Jason" was in the upstairs bedroom, first on the left. *Id.* When SJL went upstairs, the Defendant followed. *Id.* "Jason" was not there. *Id.* SJL stated that the Defendant forced her to remain and began to sexually assault her, including forcing her to engage in sexual intercourse and forcing her to have oral sex. *Id.* SJL also stated that the Defendant took a number of pictures on a red, touch-screen phone and confirmed that the photos found by law enforcement were the photos the Defendant took of her in the bedroom where the sexual assault took place. *Id.* Law enforcement had previously seized a red, touch-screen phone from the Defendant. *Id.*

Also among the photographs recovered from Defendant's seized items were photographs of an unknown, apparently juvenile female in similar positions as the photos of SJL. *Id.* These included the female performing oral sex on an adult male penis on what appeared to be the same bed, light brown or tan patterned bed sheets, and background location. *Id.* Law enforcement began investigating the identity of this female and eventually uncovered a Yahoo chat session between "Ashley Brick" and a screen name "i_miss_rocky16." *Id.* The user "i_miss_rocky16" was asking "Ashley Brick" whether she knew anyone who could get some ecstasy. *Id.* "Ashley

Brick" responded that she had a friend named "Shane" who could get some ecstasy in return for sexual favors. *Id.* The chat also included directions to a residence on Latta Street in White Bear Lake, MN. *Id.* A woman at that address identified the female in the photographs as her daughter, a 12-year-old female Sykes refers to as MES. *Id.*

Upon meeting MES, Sykes states that he immediately recognized her as the female in the photos. *Id.* MES reported that she was in an on-line relationship with "Ashley Brick" and that she had met "Ashley Brick" via Facebook. *Id.* MES confirmed the existence of the recovered Yahoo chat, stating she was looking for ecstasy for her brother. *Id.* MES stated she met with "Shane" sometime on a winter Saturday, possibly in January 2010, when he picked her up in Mead Park in White Bear Lake and took her to an unknown White Bear Lake residence. *Id.* MES described the house as dark, maybe maroon in color, with an A-frame type front and a white gate/fence along the front stoop. *Id.* MES could not recall the house numbers/address. *Id.*

At the residence, MES reported that "Shane" escorted her upstairs to the first bedroom on the left, where MES provided oral sex to "Shane" in return for three white pills he claimed were ecstasy. *Id.* MES confirmed that "Shane" had taken pictures of her and confirmed that the recovered photos depicted her with "Shane." *Id.* MES also described the bedroom as having dark brown walls with a ledge or shelf at the head of the bed. *Id.*

During the course of the investigation, law enforcement discovered that the Defendant has a friend named James William Blake who may reside with his parents at an address on Van Dyke Street in White Bear Lake that matches the general description provided by SJL and MES. *Id.* Sykes created a sequential photo line-up of 12 houses and separately presented the line-up to SJL and MES. *Id.* SJL and MES were shown the same photographs, but in different orders. *Id.*

Sykes stated that "[b]oth SJL and MES positively and without reservation identified the Van Dyke Street residence as the location" they were taken to by the Defendant. *Id.*

Sykes executed the search warrant at the White Bear Lake residence on May 13, 2010 at 1:20 p.m., seizing digital photos and video, bed sheets, a pillow case, and marijuana paraphernalia. (Gov't Ex. 6A at Receipt, Inventory and Return.)

## II. CONCLUSIONS OF LAW

Under well-established Fourth Amendment jurisprudence, a valid search warrant must be supported by an affidavit providing the magistrate with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236-39 (1983). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* at 239. A supporting affidavit that consists of conclusory allegations cannot support a finding of probable cause. *Id.* Veracity, reliability, and basis of knowledge are "highly relevant" in determining whether a supporting affidavit establishes probable cause. *Alabama v. White*, 496 U.S. 325, 328 (1990). Further, boilerplate language concerning previous investigations serves no purpose toward establishing probable cause and must be disregarded. *Ybarra v. Illinois*, 444 U.S. 85, 90 (1979) (search must be supported by probable cause particularized to defendant); *see also United States v. Weber*, 923

F.2d 1338, 1345-46 (9th Cir. 1991) (boilerplate statements "may have added fat to the affidavit, but certainly no muscle").

### A. The Affidavit in Support of the March 4, 2009 Search Warrant (Gov't Ex. 1) Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found At Defendant's Residence

The first issue is whether the March 4, 2009 search warrant application provided the signing judge with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236-39 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.").

As an initial matter, the first two pages of the affidavit are padded with a lengthy description of how Internet distribution of child pornography works and how "typical" computer investigations of child pornography proceed. The Court concludes that this generalized background information, unrelated to the details of this investigation adds little, if anything to the determination of probable cause. Additionally, while portions of the remaining information in the affidavit are sufficient to establish probable cause, the affidavit unnecessarily includes several conclusory allegations that add nothing to the probable cause determination. For example, the affidavit includes several statements to the effect that the affiant or other officers were able to identify files "known to law enforcement" to be child pornography within the meaning of Minn. Stat. § 617.247 (either by matching SHA1 hash values to a law enforcement list of "bad files" or by other means.) Statements such as these, unaccompanied by a description of the file and/or unaccompanied by details showing how the viewer knows the person depicted in the video to be under eighteen, cannot tell the Court enough to make a determination of probable cause.

While there is no requirement that a judge issuing a warrant related to allegedly pornographic or obscene material actually view the materials in controversy, a supporting affidavit in a child pornography case must describe the material in sufficient detail to allow the issuing judge to determine that the material is child pornography unprotected by the First Amendment. *United States v. Chrobak*, 289 F.3d 1043, 1045 (8th Cir. 2002) (citing *New York v. P.J. Video, Inc.*, 475 U.S. 868, 873-74 (1986)) (to determine whether materials are child pornography unprotected by First Amendment, judge must rely on a detailed factual description or must view the images). Assertions in the affidavit by an investigator or other law enforcement agent, that the images meet the definition in the statute, are not enough. *P.J. Video*, 475 U.S. at 873-74 (citing *Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636 (1968)) ("a warrant authorizing the seizure of materials presumptively protected by the First Amendment may not issue based solely on the conclusory allegations of a police officer that the sought-after materials are obscene"). As probable cause must be assessed by a judge, not an investigating officer, a warrant's supporting affidavit must contain facts sufficiently specific to enable the issuing judge to "focus searchingly on the question of obscenity." *Id.*; *see also United States v. Brunette*, 256 F.3d 14, 18 (1st Cir. 2001) (detailed fact description required; subjectivity inherent in identifying lascivious images precisely why probable cause must be assessed by a judge, not an agent).

Under *Minnesota v. Cannady*, a 2007 Minnesota Supreme Court case analyzing and interpreting Minn. Stat. § 617.247, in order to prove the crime of possession of child pornography the government must prove that 1) not only are the persons depicted in pornographic work actually under the age of 18, but also 2) that the individual who possessed the pornographic work actually knew that the persons depicted were under the age of 18. *Cannady*, 727 N.W.2d 403, 407-09 (2007). Here, although the affidavit is padded with irrelevant

information and littered with conclusory allegations, which the Court has disregarded, the affidavit also contains detailed descriptions of three files that were downloaded from the IP address connected to the Defendant.

First, the affidavit clearly establishes the connection between the Defendant and the IP address and host computer from which the files were downloaded. Second, Hanson's descriptions of the files, particularly the fact that the children in the videos are described as appearing to be respectively 9 to 12 years old, 10 to 13 years old, or 8 to 12 years old, helps to establish probable cause to believe the Defendant knew the children were underage. These specific details are necessary to provide the Court with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing under *Cannady* and Minn. Stat. § 617.247. *P.J. Video, Inc.*, 475 U.S. at 873-74; *Chrobak*, 289 F.3d at 1045. Lastly, Bruchu's descriptions of the children in the videos as "obviously pre-pubescent" or "pre-pubescent" provides further evidence tending to show that the persons in the videos were in fact under eighteen years of age *and* that the Defendant knew the persons were under eighteen. The Court finds that these detailed fact descriptions contained in the supporting affidavit allow the court to "focus searchingly on the question of obscenity" and provide sufficient detail to allow the issuing judge to determine whether the materials are unprotected child pornography. *P.J. Video*, 475 U.S. at 873-74; *United States v. Brewer*, 588 F.3d 1165, 1170-71 (statement in affidavit that defendant photographed minor S.B. while she performed oral sex on him constitutes sufficiently detailed factual description to support finding of probable cause). For these reasons, the Court concludes that the officer's application here meets the requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.

**B.	The Affidavit in Support of the March 12, 2009 Search Warrant (Gov't Ex. 2) Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found Within Items Seized From Defendant's Residence**

The second issue is whether the March 12, 2009 search warrant application supports the signing judge's probable cause determination.  The March 4, 2009 affidavit and the March 12, 2009 affidavit contain substantially similar information.  As with the March 4, 2009 affidavit, the first two pages of explanatory information within the March 12, 2009 affidavit must be disregarded for purposes of determining probable cause.  However, the detailed information contained in Hanson's report, especially the description of the three downloaded files, provides a substantial basis supporting the judge's probable cause determination. *P.J. Video, Inc.*, 475 U.S. at 873-74; *Chrobak*, 289 F.3d at 1045; *Brewer*, 588 F.3d at 1170-71.  Therefore, the Court finds that the affidavit in support of the March 12, 2009 search warrant meets the requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.

**C.	The Affidavit in Support of the February 25, 2010 Warrant for Defendant's Person and Residence (Gov't Ex. 1A) Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found on Defendant's Person and/or At His Residence**

The third issue is whether the affidavit in support of the February 25, 2010 warrant for Defendant's person and residence (Gov't Ex. 1A) provided the signing judge with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing.  *Gates*, 462 U.S. at 236-39.  First, the affidavit clearly establishes the connection between the ashleycasper78@yahoo.com and ashleybrick71@yahoo.com email addresses and the IP address assigned to the Defendant's residence.  Second, the affidavit clearly establishes the connection between the "Ashley Brick" Facebook profile and the Defendant's residence.  Third, the affidavit describes in detail how the "Ashley Brick" Facebook profile and email

addresses connected to Defendant were used to ask the juvenile female VMS for nude

photographs and to persuade her to engage in prostitution.  Taken together, the affidavit provides

a highly detailed and thorough report that supports a finding that evidence of the crimes of

possession of child pornography and child solicitation was likely to be found on Defendant's

person or at his residence.  Therefore, the Court finds that the affidavit in support of the warrant

for Defendant's person and residence meets the requirements of the Fourth Amendment and is

sufficient to support a finding of probable cause.

**D.     The Affidavit in Support of the February 26, 2010 Warrant for Defendant's Vehicle (Gov't Ex. 2A) Search Warrant Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found in Defendant's Vehicle**

The fourth issue is whether the affidavit in support of the February 26, 2010 warrant for

Defendant's vehicle (Gov't Ex. 2A) provided the signing judge with a substantial basis for

determining the existence of probable cause to believe a search would uncover evidence of

wrongdoing.  *Gates*, 462 U.S. at 236-39.   As described above, the affidavits in support of the

February 25, 2010 warrant for Defendant's person and residence (Gov't Ex. 1A) and the

February 26, 2010 warrant for Defendant's vehicle (Gov't Ex. 2A) are substantially similar.  The

affidavit in support of the warrant for Defendant's vehicle describes how law enforcement saw a

laptop computer and cables in plain view in the back seat of the 2001 Jeep Cherokee belonging

to Defendant and that Defendant was in fact driving.  These vehicle-specific facts, considered in

light of the facts connecting the Defendant to the "Ashley Brick" Facebook profile and juvenile

female VMS, provide probable cause that evidence of the crimes of possession of child

pornography and child solicitation was likely to be found in Defendant's vehicle.  Therefore, the

Court finds that the affidavit in support of the warrant for Defendant's Jeep Cherokee meets the

requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.

**E.**  **The Affidavit in Support of the March 2, 2010 Warrant for a Lake Elmo, Minnesota Residence (Gov't Ex. 3A) Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found at the Lake Elmo Residence**

The fifth issue is whether the application in support of the March 2, 2010 warrant for a Lake Elmo, Minnesota residence (Gov't Ex. 3A) provided the signing judge with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236-39. As described above, the affidavits in support of the February 25, 2010 warrant for Defendant's person and residence (Gov't Ex. 1A) and the March 2, 2010 warrant for a Lake Elmo, Minnesota residence (Gov't Ex. 3A) are substantially similar. The affidavit in support of the warrant for the Lake Elmo residence states that Defendant's personal laptop was currently in the possession of Robert Gardner, who resides on Lake Elmo Ave. N. in Lake Elmo, Minnesota. *Id.* Gardner confirmed that he was repairing Defendant's IBM Thinkpad T42 laptop and had loaned Defendant his laptop during the repair. *Id.* Taken together with the evidence connecting Defendant to the "Ashley Brick" Facebook profile and VMS, the facts described in the affidavit concerning Robert Gardner's residence and admitted possession of Defendant's laptop provides probable cause that evidence of the crimes of possession of child pornography and child solicitation was likely to be found within the Defendant's laptop at Gardner's residence. Additionally, the warrant itself was confined to the laptop, cables, and the data contained within the laptop. Therefore, the Court finds that the affidavit in support of the warrant for the Lake Elmo residence meets the requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.

**F.**  **The Affidavit in Support of the Search Warrant for Facebook Headquarters (Gov't Ex. 4A) Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found at Facebook Headquarters**

The sixth issue is whether the affidavit in support of the search warrant for Facebook Headquarters (Gov't Ex. 4A) provided the signing judge with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236-39. The affidavit clearly describes the connection between both the "Ashley Brick" and "Ashley Casper" Facebook profiles and the IP addresses assigned to Defendant's residence. The affidavit states that information relating to "Ashley Brick" has been found on Defendant's cell phone. *Id.* Further, the affidavit provides great detail about how these two Facebook profiles were used to ask juvenile females for nude or sexually explicit photographs and to engage in prostitution.

The affidavit also provides information that a Facebook profile for "Jason Brickers" was used to contact juvenile females and ask them for nude or sexually explicit photographs. Then, the affidavit connects the "Jason Brickers" profile to the Defendant by describing how two juvenile females who were in contact with the "Jason Brickers" Facebook profile provided a cell phone number given to them by "Jason Brickers" that the affiant recognized as belonging to the Defendant.

These facts are sufficient to constitute probable cause that evidence of the crimes of possession of child pornography and child solicitation is likely to be found within Facebook records contained at Facebook's headquarters because they tend to show that the Defendant used Facebook to commit these crimes. Therefore, the Court finds that the affidavit in support of the warrant for Facebook headquarters meets the requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.

**G.      The Affidavit in Support of the Warrant for Yahoo Headquarters (Gov't Ex. 5A) Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found at Yahoo Headquarters.**

The seventh issue is whether the application in support of the warrant for Yahoo Headquarters (Gov't Ex. 5A) provided the signing judge with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236-39. The affidavit in support of the warrant for Facebook headquarters is substantially similar to the affidavit in support of the warrant for Yahoo headquarters. In addition, however, the affidavit in support of the warrant for Yahoo headquarters provides additional information linking the Defendant to "Jason Brickers." Specifically, the affidavit states that an email from jasonbrickers@yahoo.com containing a photo of a young, nude adult male lying on his back was sent to a juvenile female. Furthermore, the affidavit states that a forensic search of the Defendant's cell phone revealed a Yahoo! Instant message chat application with a screen name ashleybrick71 and a saved email address for ashleycasper78@yahoo.com.

These facts are sufficient to constitute probable cause that evidence of the crimes of possession of child pornography and child solicitation is likely to be found within Yahoo records kept at Yahoo headquarters because the facts tend to show that the Defendant used Yahoo email addresses and applications to commit these crimes. Therefore, the Court finds that the affidavit in support of the warrant for Yahoo headquarters meets the requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.

**H.** **The Affidavit in Support of the Search Warrant for the White Bear Lake Residence (Gov't Ex. 6A) Sets Forth Facts Establishing Probable Cause To Believe Evidence Of a Crime Would Be Found at the White Bear Lake Residence**

The eighth issue is whether the affidavit in support of the search warrant for the White Bear Lake residence (Gov't Ex. 6A) provided the signing judge with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of

wrongdoing.  *Gates*, 462 U.S. at 236-39.   The affidavit provides a thorough explanation of how the "Jason Brickers" and "Ashley Brick" Facebook profiles were used by the Defendant to lure first one, and then another juvenile female to a house in White Bear Lake.  The affidavit also provides a detailed description from both juvenile females of the sexual assault Defendant perpetrated against them, as well as confirmations from both females that the nude and explicit photographs recovered from Defendant's cell phones were taken of them by the Defendant during the separate assaults.  In addition, the affidavit provides details about the location and appearance of the bedroom where the assaults took place – namely that it was a dark-paneled upstairs room (described by both juveniles as the first bedroom on the left) with a bed that had light brown or tan bed sheets with a square-shaped pattern and with a shelf or ledge over the bed. The juvenile females provide consistent descriptions of the bedroom.  Most importantly for purposes of a probable cause determination with respect to this particular residence, however, during a sequential photo line-up both juveniles "positively and without reservation" identified the Van Dyke Street residence in White Bear Lake as the house they were taken to by the Defendant.   In sum, the facts described in the affidavit concerning the White Bear Lake residence and its connection to the sexual assaults perpetrated upon two juvenile females provides probable cause that evidence of the crimes of possession of child pornography, child solicitation and rape was likely to be found at the Van Dyke Street residence in White Bear Lake.  Therefore, the Court finds that the affidavit in support of the warrant for the White Bear Lake residence meets the requirements of the Fourth Amendment and is sufficient to support a finding of probable cause.

**I.      Defendant's Motions to Suppress Statements, Admissions, and Answers Should Be Denied as Moot**

The final issues remaining are Defendant's motions to suppress statements, admissions, and answers.  At the April 20, 2010 hearing, counsel for the Government NOEL represented to the Court that there are no statements, admissions or answers at issue in this case.  Counsel for the Defendant agreed.

At the June 10, 2010 hearing, counsel for the Government clarified that to the extent the Defendant has made statements, admissions and/or answers, the Government will not be using them at trial.   The Court therefore concludes that the Defendant's Motion to Suppress Statements, Admissions, and Answers [## 15; 32] should be denied as moot.

### III.    RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#14] be **DENIED**, that Defendant's Motion to Suppress Statements, Admissions, and Answers [#15] be **DENIED as moot**, that Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [#31] be **DENIED,** and that Defendant's Motion to Suppress Statements, Admissions, and Answers [#32] be **DENIED as moot**.

DATED:  June 24, 2010                              *s/ Franklin L. Noel*
                                                                 FRANKLIN L. NOEL
                                                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before July 8, 2010, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 8, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.